UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-11478-RWZ

ANTHONY SANTULLO, individually and as trustee of Jenco Realty Trust, and
MICHAEL SANTULLO, on behalf of Sanco Builders, LLC

v.

CITY OF WOBURN, THOMAS L. MCLAUGHLIN, individually and as mayor of the City of Woburn, CITY OF WOBURN PLANNING BOARD and its members individually and in their capacity as members, CLAUDIA LEIS BOLGEN, MICHAEL C. VENTRESCA, JOHN CASHELL, ROBERT DOHERTY, KEVIN DONOVAN, DAVID EDMONDS and MARTIN MCGAH, individually and in their capacities as members of the City of Woburn Planning Board

ORDER

July 14, 2008

ZOBEL, D.J.

The parties have competing discovery motions before the court. The motions arise from defendants' inadvertent production of (1) minutes of an executive session of the City of Woburn Planning Board ("Board") held on April 13, 2004 ("April 13 Minutes"); and (2) six purportedly privileged e-mails relating to other matters. Plaintiffs assert that defendants waived their attorney-client and open meeting litigation exception[1] privileges and have moved to compel further documents. Defendants seek

---

[1] Massachusetts General Laws chapter 39, section 23B(3) allows a government body to go into executive session to discuss strategy with respect to litigation if an open meeting would have a detrimental effect on the litigating position of the government body. The minutes from the executive session may remain secret so long as publication may defeat the lawful purposes of the executive session. Mass. Gen. Laws. ch. 39, § 23B. The court adopts defendants' use of the term "open meeting litigation exception" to refer to this privilege.

a protective order prohibiting the production of minutes from other executive sessions of the Board.

## I. Executive Session Minutes

### A. Attorney-Client Privilege

"The courts will grant no greater protection to those who assert the [attorney-client] privilege than their own precautions warrant." In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989).  Under the so-called "middle test," the court examines: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the amount of time it took the producing party to recognize its error; (3) the scope of the production; (4) the extent of the inadvertent disclosure; and (5) the overriding interest of fairness and justice.  Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 292 (D. Mass. 2000).  Defendants inadvertently produced the April 13 Minutes (a two-page document) as part of their initial disclosures, which contained only 1,213 pages of documents, and did not realize their error until nearly five months later.  They blame a temporary worker hired by the City to take the minutes.  According to defendants, the worker should have captioned the document, "Minutes for Executive Session Held April 13, 2004," but instead captioned them, "Minutes for the April 13, 2004 Planning Board Meeting."  This excuse leaves much to be desired, however, as even a cursory review of the document reveals that the sub-heading states, "Executive Session," and the body of the document consists solely of the City Solicitor's advice to the Board regarding the pending related state court litigation.  Although the attorneys involved in the review attest that they reviewed the documents, they provide no details regarding any

precautions taken to screen the privileged documents.  (See Aff. of Patrick Hanley (Docket # 23) ("I reviewed approximately greater than 1500 pages of documents . . . in order to segregate non-responsive and privileged documents related to defendants' initial disclosures"); Aff. of Judy Levenson (Id.) ("I conferred with attorney Patrick Hanley about screening documents . . . in order to segregate non-responsive and privileged ones related to defendants' initial disclosure to plaintiffs . . . .  I reviewed many of the more than 1200 initial disclosure documents before they were produced and answered questions from attorney Hanley . . . in connection with the production").)  Considering (1) the privileged nature of the document was obvious; (2) the document was part of a small production of less than 1,300 pages; and (3) it took defendants nearly five months to discern their error, they have waived the attorney-client privilege with respect to the April 13 Minutes.

"In general, a waiver premised on inadvertent disclosure will be deemed to encompass all other such communications on the same subject." Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs, 60 F.3d 867, 883-84 (1st Cir. 1995) (internal quotation marks and citation omitted).  However, "there is no bright line test for what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." Fort James Corp. v. Solo Cup. Co., 412 F.3d 1340, 1349-50 (Fed. Cir. 2005) (citing In re Keeper of the Records XYZ Corp., 348 F.3d 16, 23 (1st Cir. 2003)).  I am not inclined to view the subject matter of the April 13 Minutes as broadly as plaintiffs suggest.  Rather, the subject matter consists of only

3

(1) the information contained within the document's four corners; and (2) information concerning discussions between the Board and Lawton regarding whether to settle the state litigation before Judge Piper, to the extent such discussions do not fall within the open meetings litigation exception, as discussed below.  The court does not construe the subject matter to encompass any attorney-client communications between the Board and any of its outside counsel (e.g., Brody, Hardoon, Perkins & Kesten, LLP; Kopelman and Paige P.C.; or Dan Wojeck).

### B.  Open Meeting Litigation Exception

Plaintiffs do not contest that minutes from other executive session meetings may be withheld under this privilege.  Rather, they argue that by producing the April 13 Minutes defendants have waived the privilege as to all of the executive session minutes.  However, unlike attorney-client communications, executive privilege is only waived with respect to the document produced.  In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997) ("release of a document only waives these [executive] privileges for the document or information specifically released, and not for related materials"); Marisol v. Giuliani, No. 95 Civ. 10533, 1998 WL 132810, *8 (S.D.N.Y. Mar. 23, 1998) (same).  Accordingly, although the privilege has been waived with respect to the April 13 Minutes, it remains in effect for all other executive session minutes.

### II. E-mails

Defendants inadvertently produced six e-mails over which they now assert privilege.  The privileged communications in these emails are de minimus (and in some instances border on non-existent).  Plaintiffs may use the produced e-mails.  However,

4

their expansive interpretation of the subject matter in these e-mails is not well-taken. I find no further subject matter waiver of attorney-client privilege occurred from their production.

## III. Conclusion

Accordingly, Plaintiffs' Motion to Compel (Docket # 17) is ALLOWED in part and DENIED in part, and Defendants' Cross-Motion for a Protective Order (Docket # 22) is ALLOWED in part and DENIED in part. Defendants have waived all privileges with regard to documents already produced and have waived their attorney-client privilege with regard to the subject matter of the April 13 Minutes within the parameters discussed above. However, they are not compelled to produce minutes from other executive sessions of the Board.

|  |  |
|---|---|
| July 14, 2008 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |